PEDRO P. AGRAVANTE, JR., Pro se
and CORITA B. AGRAVANTE, Pro se
P.O. Box 22281
GMF, Guam 96921
Telephone no, 671.646/8453/4537
Cell phone 671.7887291

FILED
DISTRICT COURT OF GUAM
NOV 15 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

PEDRO P. AGRAVANTE, JR. and CORITA B. AGRAVANTE

Plaintiffs

vs.

JAPAN AIRLINES INTERNATIONAL CO., LTD.

Defendant

______________________________/

CIVIL CASE NO. CIV04-00036

MOTION OF IMPOSITION OF APPROPRIATE SANCTION AND TO DECLARE DEFENDANT TECHNICALLY IN DEFAULT: DECLARATION OF SERVICE

I. BACKGROUND.

On October 4, 2006, at about 2:45 p.m., Plaintiffs Agravante received from the District Court a copy of an Order granting Defendant Supplemental Motion to Extend Scheduling Order Deadlines.

Accordingly, the Defendant intention for filing the Motion:

> "Sought extensions to certain deadlines in order to permit it to locate certain data for its experts to allow its experts the time necessary to analyze said data and form their opinions and for the parties to conduct discovery thereon"

The Plaintiffs to date, according to Court have not filed an objection to either the Motion or the Supplemental Motion, and for a good cause shown, the Court grants the Defendant Supplemental Motion amending the following deadlines contained in the Original Scheduling Order (Docket no. 36) and/or Discovery Plan (Docket no. 37) approved by the Court on January 26, 2006, now amended and changed as follows:

ORIGINAL

| Description | From | To |
|---|---|---|
| Expert Disclosures: | July 13, 2006 | November 30, 2006 |
| Rebuttal Expert Disclosures: | September 13, 2006 | December 14, 2006 |
| Discovery Cutoff: | December 5, 2006 | December 29, 2006 |
| Discovery Motion Deadlines: | November 14, 2006 | January 5, 2007 |
| Dispositive Motion Deadlines: | January 3, 2007 | January 30, 2007. |

On October 18, 2006, Plaintiffs filed a Motion to Hear: VIOLATIONS OF ETHICAL RULES AND MISCONDUCT WITH A DECLARATION OF SERVICE, because Defendant as usual did not provide copies of either Motion for Plaintiffs to respond to, therefore could not file their objections. Plaintiffs were also caught by surprise by this Defendant unexpected action.

Plaintiffs believe Defendant counsel intentionally did not provide copies of either Motion because he expected to meet objections that will jeopardize the Court's to grant his Supplemental Motion. Furthermore, the Defendant's Supplemental Motion is not for a good cause for the parties to conduct thereon, but for the Defendant advantage to give him time to prepare for rebuttal that was due on September 13, 2006 and to retrieve lost data from the time the accident happened on July 20, 2002 to allow their experts time to analyze said data and form their opinions

The action taken by Defendant withholding information from Plaintiffs mislead the Court that there was no objection and allow grant the supplemental Motion. A violation of LR 16.5 and Rule 8.4 (a)(b).

II.    DEFENDANT RESPONSE TO THE MOTION

On October 31, 2006, Defendant filed a Motion of Opposition to Plaintiffs Agravante Motion on the grounds that Plaintiffs present an unfounded and unnecessary motion before the Court:

A.    That, Plaintiffs Motion asserted Defendant purposely failed to serve them JAL Motion to Extend the Scheduling Deadlines. As will be shown, Defendant

reiterated, as proper under Federal Rule of Civil Procedure 5., serviced the Plaintiff
at their last known address listed on the document filed with the Court. As service was
properly made, the Plaintiffs claims have no merits.

      B.    Moreover, that the Plaintiffs allege that JAL's counsel have engaged in
Violations of Ethical Rules, an assertion that the Court has previously rejected. Again,
Plaintiffs claim that a Conflict of Interest exist has no Merits.

      The Defendant continued, for these reasons and those stated herein, the Court
should deny Plaintiffs Motion and enter an Order that addresses their repetitive frivolous
filing with the Court.

III.    PLAINTIFFS REBUTTAL.

      In response to A. Plaintiffs believe, Defendant Japan Airlines International Co.,
Ltd. Misinterpreted the Federal Rule of Civil Procedure 5. That this Rule has 2 sections,
namely; 5(a) When Required and 5(b) How Made.

    " 5(a) WHEN REQUIRED, states that except as otherwise provided in these
Rules, every order required by its terms to be served, pleading subsequent to the
Original complaint, unless the Court otherwise order because of numerous defendants,
every paper relating to discovery required to be served upon the party unless the Court
otherwise order, every written MOTION other than one which may heard "Exparte",
every written notice , appearance, demand, offer of judgment, designation of records or
appeal  and similar paper shall be served upon each of the parties."

      In simple terms, 5(a) when required should follow the Original Scheduling
and Discovery Plan when it was form by Plaintiffs Agravante and Mr. David Ledger,
counsel for Defendant.

      That, any action will be taken by any party, they are required to "Meet and

Confer" to discuss matters, or any changes in the Scheduling Order and Discovery Plan.

That, the preparation of the "Documents" Plaintiff should lead.

That both parties must agree and sign the "Documents" before filing in Court to obtain any changes in the activity dates and approval from the Magistrate Judge. The Defendant should have followed the same requirement before filing the Supplemental Motion. Moreover, the case Status and Progress was already running according to the schedules of the Original Scheduling Order and Discovery Plan when Defendant filed its supplemental Motion. It was untimely to stop the activity thereby making the action questionable.

"5(b) HOW MADE, on the other hand, refers to summons serve by paid server Or Marshall to a party to appear in Court for a hearing. Like leaving the summon in a conspicuous place therein, or leaving it to the person suitable age discretion then residing therein, service by mail is complete upon mailing."

Because of the requirement exist and the on going activity in the Original Scheduling Order and Discovery Plan, this argument does not apply. The parties should always be aware of any Motions filed in Court, for the progress of the case, to lessen the cost of litigation and for transparency purposes. And for Defendant counsel to argue that "if the Agravantes failed to pickup their mail, they have done so at their peril and prejudice" is an understatement and a completely denial of the true activity of the mailing communications between the Plaintiff and Defendant since August 5, 2005.

Plaintiffs believe, in their last known mailing address written on their Motions mentioned by Defendant counsel have also listed their telephone numbers. In fact, the Defendant, through their Office of Carsmith Ball LLP, located at BOH Building, Suite 401 in Hagatna had been calling or contacting the office of Plaintiff Corita B. Agravante

at American Bakery in Dededo whenever they needed them to pick-up "Documents"

in relation to the case. (See Exhibit 4.)

In response to B, Defendant opposition to Plaintiffs Motion to Hear

Violation of Ethical Rules and Misconduct, the Defendant argues that the hearing

On the "Petition" regarding Conflict of Interest is parallel to the current situation

and the Defendant uses the Ruling and the Decision of the Court. The Court warned,

Plaintiffs Agravante that they are required to follow Federal Rules of Civil Procedure.

They should not present any groundless motions or be subject to Sanction. Defendant

further argues that the Court should disregard consideration of Arguments that have

no merits and have been rejected by the Court.

The Defendant selection of arguments is to undermine the Plaintiffs efforts to

pursue this case in Court by using Court's Ruling and Decision on a "Petition" that have

been decided and have no relevancy to the current Motion.

The "Petition" that was filed on November 28, 2005, was about Mr. David

Ledger's status as counsel for Japan Airlines International Co., Ltd. under Rule 1.9(a)

related to Attorney/Client relationship. The "Petition" has nothing to do with facts of

the current Violations of Ethical Rules and Misconduct or even a near parallel to it as

clearly explained by Plaintiffs Agravante in their Motion filed on October 18, 2006. The

Defendant opposition arguments to Plaintiffs Motion is to try to put the current situation

to a different focus to detriment the action in Court and should be rejected by the Court.

The fact is, the current Motion filed by Plaintiffs against Defendant on October 18, 2006

are violations of the following:

1.  LR 16.5.

2.  Federal Rules of Civil Procedure 5.

3.  Rules of Professional Conduct, Rule 4.4, respect for the rights of a third person.

4.  Rule 8.4 Misconduct, and Model Code DR102(a)

5.  Rule 11, Sanction, violation of improper purpose to harass or to cause
    unnecessary delay needless increase in the cost of litigation.

IV.  ANALYSIS.

Based on the Defendant arguments, the facts presented and their extensive and expensive efforts to find data that may have been purge out, without knowing when this search will end, leave Plaintiffs to suffer pain, emotional distress, anxiety and mental anguish due to waiting and prejudicial treatment.

The court should also look intently how Defendant desperately looking for this Data for their experts to allow to analyze said data to form their opinions, when this Complaint has been filed on July 20, 2004 and had been known to Defendant.

Furthermore, due to Defendant Supplemental Motion, the new Scheduling Order and Discovery Plan has lost its integrity, because of the objection of the Plaintiffs. The purpose of Supplemental Motion to Extend Scheduling Deadlines admitted by the Defendant is for his own benefit and not for the parties. The Exhibits attached to this Motion is the evidence that Plaintiffs are ready to go forward with the Discovery process. It has also been admitted by Defendant in its motion filed on September 1, 2006, that was just obtained by Plaintiffs through its Defendant Office, on September 18, 2006 that

the parties have exercise diligence in divulging the identity of their respective experts, but the process of continuing the Discovery they also admitted they are still looking for missing data.

The Court should not allow this treatment to happen to an individual, even this Person is nobody like the Plaintiffs who are just trying to protect their Civil Rights. These abuses have to stop.

The Court should have the knowledge by now that Defendant will try to do all in its power to undermine Plaintiffs efforts. This situation had been happening to Plaintiffs Agravante from the time they became Propria Persona (Pro se) of this case.

Attached are Exhibits that are relevant to this case:

1. Presentation of Evidence, Preliminary Discovery and Rebuttal. Plaintiffs believed was the cause for Defendant to file the Supplemental Motion.(Exhibit 1)

2. Captain Antonio B. Tuano, Biodata and written Testimony of Facts confirming JAL pilot Error of Judgment on that Flight JO 0981 on July 20, 2002. The data that was inscribed in the flight computer that Defendant is trying to retrieve to Rebut Mr. Tuano's Statements. (Exhibit 2.)

3. Newpaper Clippings locally and internationally concerning safety regulations. As mentioned, the merger of JAL and JAS (Japan Air System) has prevented safety concerns from being swiftly dealt with. (Exhibit 3.)

   How can we expect to find the missing data of 4 years ago with this "merger Problems". Waiting for this information to be found is uncertain and a long time Process.

4. Mr. David Ledger letter to Plaintiffs is an evidence that the parties established the the true mailing activity between the parties. (Exhibit 4.)

V.  CONCLUSION.

Plaintiffs has demonstrated diligence in following the Original Scheduling Order

and Discovery Plan. With the changes in the Scheduling Order due to the Defendant Supplemental Motion, without the knowledge of the Plaintiff, they believe the integrity of the new Scheduling Order Deadlines are in question. It has been proven through the facts presented by the Defendant, they are having difficulty to locate certain data for their experts to analyze and form its own opinion. Therefore, the search is their own personal reasons and not for the parties to conduct discovery thereon.

And while they are conducting the search, the Plaintiffs Agravante and the Court are waiting when Defendant will recover this data. This is injustice.

The Plaintiffs object to Defendant Supplemental Motion. It was obtained without their knowledge, therefore the absence of a credible Scheduling Order and Discovery Plan is tantamount to a game without a Rule.

Defendant reasons are no longer well grounded and warranted by existing or a good faith arguments, should be disregarded and denied.

The Motion Defendant files on October 31, 2006 with improper purpose to harass or to cause unnecessary delay or needless increase in the cost of litigation, the Court should impose Sanction, a violation of Rule of Civil Procedure Rule 11.

Therefore, the Court shall impose upon who signed it, a representative party or both an appropriate Sanction and should pay the Plaintiffs the cost incurred because of filing of motions, including reasonable Attorneys fees.

In addition, the Court should also declare the Defendant technically in default.

DATED: Hagatna, Guam, November 15, 2006.

PRO SE

PEDRO P. AGRAVANTE, JR.

PRO SE

CORITA B. AGRAVANTE

DECLARATION OF SERVICE

I, Pedro P. Agravante, jr., hereby declare under penalty of perjury of the laws of The United States, that on November 15, 2006, I have served via Hand Deliver, a true and correct copy of the MOTION THE IMPOSITION OF AN APPROPRIATE SACTION AND DECLARE DEFENDANT IN DEFAULT: DECLARATION OF SERVICE upon Defendant counsel at the following address:

JAPAN AIRLINES INTERNATIONAL CO., LTD.
C/O CARLSMITH BALL LLP
Mr. David Ledger
Ms. Elyze J.Mcdonald
Suite 401, Bank of Hawaii Building
134 West Soledad Street
Hagatna, Guam 96910
Telephone no. 672.472/6813

Executed this 15th, day of November, 2006, Hagatna Guam.

PEDRO P. AGRAVANTE, JR.
Plaintiff

# EXHIBIT
# 1

PEDRO P. AGRAVANTE, JR., Pro se
And CORITA B.AGRAVANTE, Pro se
P.O. Box 22281
GMF, Guam 96921
Telephone 671.646.8453/4537
Celephone 671.788.7291

IN THE DISTRIC COURT OF GUAM

PEDRO P. AGRAVANTE, JR and.
CORITA B. AGRAVANTE

Plaintiffs

VS.

JAPAN AIRLINES INTERNATIONAL CO., LTD.

CIVIL CASE NO. CIV04-00036

PRESENTATION OF EVIDENCE
PRELIMINARY DISCOVERY and
REBUTTAL;
DECLARATION OF SERVICE

_______________________________________/

1. OPENING STATEMENT.

THE WARSAW COVENTION TREATY OF 1929. The United States adhere to This convention in 1934, which will provides the basic rules of Liability To Airlines in "International Transportation".

International Transportation is simple terms, mean any Transportation by aircraft for hire that starts and ends in countries Adhering to the Warsaw Convention or that start and ends in the same Warsaw Adhering country with an agreed stopping place in any other country. Because of the great amount of Countries that adhere to the Convention, the WARSAW CONVENTION applies to almost all airline transportation, including Japan.

The core complaint of the Plaintiff against Defendant Japan Airlines International Co., Ltd., are as follows;

RECEIVED

1. Plaintiff was a paying passenger in this flight JAL JO981 bound for Guam on July 20, 2002.

2. Plaintiff was injured aboard JAL JO981 on July 20, 2002.

3. Plaintiff is a resident of Guam, U.S.A. and a citizen of the United States of America.

The Warsaw Convention Articles 17 and 25 are aviation rules that cover this incident.

"Because many aviation accident are caused by improper operation, the starting point of any aviation case should be a simple consideration of whether the aircraft was properly operated. Japan Airlines Pilot in this case did not properly operate the aircraft that caused the Plaintiff injuries, that was the manner the Pilot operated the craft when taking-off the ground at Narita Airport, Japan on July 20, 2002".

PLAINTIFFS recognize the two crucial elements to establish in this case CIV04-00036 is Japan Airlines agents on board JAL flight no JO0981 Negligence and Causation (the act or process of causing)

NEGLIGENCE. It was obvious the pilot when operating the aircraft did not Take in consideration several factors; He is flying a commercial aircraft In full gross weight, which means, full passenger capacity, full cargo and Full fuel. Also that Narita Airport is an International Airport with a longer runway than smaller airports of more than 8 thousand feet. For a Pilot to use "STATIC TAKE-OFF" or sudden take off to the air without Considerations of these dangerous elements that may impede his operations Of the aircraft is totally irresponsible and intentional.

That the pilot of the aircraft has failed or neglected to recognize and to follow established in-house rules and regulations to ensure the safety and well-being of paying passengers on board JAL JO981 on July 20, 2002.

CAUSATION. The pilot's Error of Judgment or purposely flying the aircraft With sudden take-off injuring passengers is the ultimate reasons for the Accidents on board JAL 0981.

2. Background.

On July 20, 2002, at about 10:20 p.m., Narita, Japan time, Japan Airlines flight no. JO981 was on the runway waiting for instruction from The tower. The Plaintiff was talking to Mr. Robert J. Del Rosario about the outcome of their meeting in Yokohama, Japan with their Japanese business partner, Mr. Suehiro and Mr. Ando. Plaintiff at that Time, because of aircraft engine sound and passengers talking, he leaned Forward about 1 foot to hear Mr. Del Rosario's responses at the opposite side of the aisle seated at 1H. Plaintiff was seated at 2G. Suddenly, there was rattling followed by the aircraft body shaking hard and scary banging sounds all over inside the aircraft, then the aircraft move fast forward and took-off. This sudden take-off classified as Static Take-off to the air, caused the Plaintiff to slam hard backward to his seat giving him strong tingling sensation, climbing to his spinal cord, shoulder, neck and head like a whiplash. Plaintiff felt numbness in those areas.

When the craft reached its proper elevation, Plaintiff called JAL lady Flight attendant for JAL writing pad to write an incident report. She went

And came back and asked Plaintiff how any sheets. Plaintiff said, 4 sheets And mentioned to the female flight attendant, this incident is a wrongful deeds. Plaintiff warned her, one metal food cart may be a minor incident, but 3 food carts are already complete negligence and violations of safety to protect Japan Airlines paying passengers. Plaintiff did not complain about the numbness in his back, neck, shoulder and arms because there was no laceration or cuts, no visible fracture or dislocation, bruises or visible injuries.

On April 12, 2006, Mr. David Ledger, counsel for Defendant sent the First Request for Production of Documents and First Request for Answer to Interrogatories.

On May 4, 2006, Defendant Counsel has provided Plaintiffs listings Of persons with Discoverable Information.

On May 22, 2006, to follow mandatory disclosure as set forth in Rule 26(a)(1) Plaintiff responded and provided Mr. David Ledger, Defendant Counsel First Request for Answers to Interrogatories and response for Production of Document that Plaintiff reminded these documents were all Already submitted at his office after Plaintiffs terminated Mr. Gavras as His counsel. Plaintiff have not changed any of the submitted data.

On July 13, 2006, Defendant Counsel has provided Plaintiffs Japan Airlines Expert Witness Disclosures.

On July 17, 2006, Plaintiffs provided Defendant counsel listings of Persons with Discoverable information, including Expert Witness disclosure.

4. REBUTTAL

1. Defendant Persons with Discoverable Information

-Reiko Asatani, Cabin Attendant- ACCEPTED

-Rumi Fujihara, Cabin Attendant- ACCEPTED

-Hayao Suehiro, Bussiness Partmer ACCEPTED

-Heihachiro Ando, Business Partmer ACCEPTED

-Robert J. Del Rosario, Business Partner REJECTED

Reason: Conflict of Interest, I will be a witness in his Appeal In the 9th Circuit Court.

-William Gavras, Esq. REJECTED

Reason: He was my counsel, a violation of Ethical Rules to Witness against me in Court.

2. Defendant Japan Airlines International Co., Ltd

Expert witness Disclosure:

-Dr. Richard T. Gill, Ph.D. ACCEPTED

The appearance of Dr. Gill in this case can be construed as defendant Japan Airlines accepted that there is a possibility that Plaintiff was Injured in that Flight JAL JO981 on July 20, 2002, because of the manner The aircraft was flown.

This is also about comparing, Cybernetics, Robotic and Human Factors. The comparison between Human factors and these non-human objects are two World that nobody exactly knows. Science is always variable not exact and Striving to Continue to know more about human factors.

The court will see a human being trying to survive to live vs. Denying him with his very existence. This case will come down as David vs. Goliath.

DATED: Hagatna, Guam September 13, 2006.

PEDRO P. AGRAVANTE, JR
Plaintiff

DECLARATION OF SERVICE

I, Pedro P. Agravante, Jr., hereby declare under penalty of perjury of The laws of the United States, that on the 13th of September, 2006, I have Served via Hand Delivery, a true and correct copy of PLAINTIFFS PRESENTATION, PRELIMINARY DISCOVERY AND REBUTTAL; DECLARATION OF SERVICE Upon Defendant at the following address:

JAPAN AIRLINES INTERNATIONAL CO., LTD.
C/O CARLSMITH BALL LLP
Suite 401 Bank of Hawaii Building
134 West Soledad Avenue
Hagatna, Guam 96910
Telephone bo. 671.472.6813

Executed this 13th day of September 2006 at Hagatna, Guam.

PEDRO P. AGRAVANTE, ~~JR.~~
Plaintiff

# EXHIBIT

# 2

ok

RESPONSE ON REQUEST NO.13.

BIODATA OF THE WITNESS AT TRIAL:

1. NAME: CAPTAIN ANTONIO B. TUANO
2. DATE OF BIRTH: JUNE 14, 1951
3. PLACE OF BIRTH: PHILIPPINES
4. CITIZENSHIP: FILIPINO
5. S.S. NUMBER: 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
6. PILOT LICENSE NUMBER: CPL 2725272
7. ADDRESS: 139 N. MANSANITA COURT, LIGUAN TERRACE, DEDEDO. GUAM 96913
8. NAME OF PREVIOUS EMPLOYER: PHILIPPINE AIRLINES
9. ADDRESS: MANILA, PHILIPPINES
10. JOB TITLE: PILOT
11. CLASS OF AIRCRAFT OPERATING: 1. B-747-200, 2. B-747-400, AIRBUS A-330-300
12. PERIOD OF EMPLOYMENT: JULY ~~1971~~ 1977 ABT -JUNE 1998 (~~27~~ 20 ABT YEARS)
13. REASON FOR LEAVING: LABOUR PROBLEM/ 1998 PILOT STRIKE

1. NAME OF NEW EMPLOYER: FREEDOM AIR
2. ADDRESS: GIAA
3. TEL. NUMBER: 472-8009
4. JOB TITLE: PILOT
5. CLASS OF AIRCRAFT OPERATING: SD-330, SD-360, PA-32-300, B-172 AND C-207
6. PERIOD OF EMPLOYMENT; MARCH 2003 TO PRESENT
7. REASON FOR LEAVING: STILL WORKING WITH FREEDOM AIR

WITNESS SIGNATURE:

[signature], DATE 28 May 2005

ANTONIO B. TUANO

RECEIVED MAY 31 2005 8:20 a.m. GORMAN & GAVRAS

RECEIVED JUN 20 2005 8:54 a.m. GORMAN & GAVRAS

TESTIMONY WILL COVER THE FOLLOWING AREA:

1. JAPAN AIRLINES PILOT'S ERROR OF JUDGEMENT FOR USING THE "STATIC TAKE-OFF"
2. JAPAN AIRLINES PILOT AND FLIGHT ATTENDANTS DID NOT OBSERVE THE PROPER EMERGENCY PROCEDURE TO ATTEND TO PASSENGERS QUESTIONS AND COMPLAINTS AFTER AN INFLIGHT INCIDENT.
3. AND TO PROVIDE UPDATE REPORT AND ASSURANCES THAT THE AIRCRAFT IS RELIABLE AND SAFE EVEN WITH THE OCCURRENCE OF THE INCIDENT TO CONTINUE ITS FLIGHT TO GUAM.

WHAT IS "STATIC TAKE-OFF"? It is a manner in which the pilot steps on the brake of the aircraft and at the same time giving fuel to the engine to reach 70% power before releasing, then applying full force and taking a sudden take-off to the air.

And to use this manner of taking-off the ground is the pilot's judgment after him considering other factors that may affect the aircraft performance such as:

1. The airport's shorter runway
2. The weather conditions at the time of the flight
3. To test the serviceability of the engine power
4. The aircraft is flying in full gross weight, which means:
    1. Full passenger capacity
    2. Full cargo
    3. Full fuel

THE ERROR OF JUDGEMENT OF THE PILOT OCCURRED WHEN HE TOOK-OFF THE GROUND WITH "STATIC TAKE-OFF" KNOWING THAT NARITA AIRPORT HAS A LONGER RUNWAY AND THE NEGLIGENCE OF JAPAN AIRLINES FLIGHT CREWS FOR NOT SECURING THE 3 METAL FOOD CARTS THAT CAUSE SERIOUS INFLIGHT INCIDENT.

And the JAPAN AIRLINES Pilot and agents and/or flight crews did not observe the Standard Flight Procedures whenever there is an in-flight incident such as:

1. The JAPAN AIRLINES pilots, agents and/or flight crews did not inform passengers the condition of the aircraft after the in-flight incident

2. The JAPAN AIRLINES pilot, agents and/or flight crews did not inform the passengers what course of action the pilot would take whether to go ahead with the flight to Guam or to return to Narita, Japan after the incident
3. The JAPAN AIRLINES pilot, agents and/or flight crews did not even assess the damages or injuries that may have happened to the passengers after the in-flight incident
4. The JAPAN AIRLINES pilot, agents and/or flight crews did not inquire or asked if any passenger has injury or complaint after the in-flight incident.
5. And JAPAN AIRLINES flight crews complete disregard of its duty to provide adequate measures to protect the safety and well-being of all ticketed passengers of JAPAN AIRLINES, flight JO 981, on July 20, 2002.

# EXHIBIT
# 3

The Asahi Shimbun — Friday, May 20, 2005

# JAL gets yet another warning over air safety

## Also, fewer people are flying with the airline and travel agents are getting the jitters.

The Asahi Shimbun

Japan Airlines, beset by one problem after another concerning safety regulations, now must claw back passenger trust. But if events this week are anything to go by, JAL faces still a bumpy ride.

A leading travel agent is considering removing the JAL name from its brochures, industry insiders say. Travelers are choosing other airlines.

"Passenger bookings began dropping in late March and tens of thousands shifted to All Nippon Airways (ANA) in April," said a senior JAL official.

Another travel agent said a firm that had booked it to set up a tour for its customers requested the airline be changed to anything "but JAL."

On March 17, the transport ministry took the extraordinary step of ordering JAL to clean up its act. JAL was warned again this week over an episode in which crew neglected in-house regulations on landing procedures.

The incident, which occurred Sunday during the landing of JAL Flight 726, carrying 300 passengers and crew from Jakarta to Narita International Airport, came to light on Wednesday.

During the landing, the cabin crew were unable to properly secure two metal meal carts, violating JAL rules.

The unstowed carts were held in place by a crew member during the landing. But any sudden shift in the aircraft could have sent them crashing down aisles.

The cabin crew later told JAL officials that the meals were served 30 minutes behind schedule because a crew member had not switched on the heating oven. After the meal, about 70 trays still remained to be collected when the pilot ordered seat belts to be fastened for landing.

After learning that the crew were not ready for landing, the pilot canceled the descent and began regaining altitude.

The harried attendants placed carts in the wrong spots and had no room for two. In the 8:59 a.m. landing, a crew member sat gripping the carts, whose breaks were applied. Still, crew members told the pilot they were ready for landing.

The transportation ministry issued a formal warning to JAL over the incident, saying it is still not paying sufficient attention to safety.

The airline suspended the 10 crew members temporarily.

This JAL flight was forced to abort takeoff at Narita International Airport because of an oil leak on April 17.

ASAHI SHIMBUN FILE PHOTO

"I sincerely apologize for such a violation of in-house rules when the whole company has been doing its best to prevent mistakes in order to regain trust," Hidekazu Nishizuka, JAL senior managing director, told reporters Wednesday.

JAL recently reshuffled its top management to take responsibility for other problems, including a Jan. 22 flight bound for Haneda in Tokyo that began taxiing for takeoff without clearance at New Chitose Airport near Sapporo.

On March 11, the pilot of a JAL flight to Narita International Airport at Inchon Airport in South Korea misunderstood the control tower's instructions to wait and entered a runway, forcing another jet to abort its landing.

JAL was also cited in other mixups on the ground and for a flight to New Chitose Airport on March 16 without having an emergency escape device set.

The company also admitted five jumbo jets had flown even though some components failed to meet required standards of airworthiness.

The ministry formally ordered the airline on March 17 to improve operations under the aviation law—considered a severe rebuke.

But even after the reprimand, a JAL flight May 8 from Sao Paulo to Narita made an emergency landing at New Chitose because of a sudden drop in cabin pressure.

Meanwhile, JAL said after the ministry reprimand in March that Isao Kaneko, chief executive officer of the JAL group, would step down as CEO to take responsibility for the safety incidents but stay on as chairman.

He is now expected to leave the board at the end of this month.

Critics say the sheer size of the company—JAL merged with the former Japan Air System (JAS) under the same holding company in April last year—has prevented safety concerns from being swiftly dealt with.

The department within the new JAL group that oversees flight safety and aircraft maintenance is composed of managers from both the former JAL and JAS.

The two sides don't know how to communicate with each other, and tend to blame the other for the problems, say insiders.

A senior transport ministry official said, "There is no way for the management to immediately grasp what is at issue and to take steps to prevent recurrences."

Other airlines are facing their own share of troubles.

On Wednesday, Air Nippon Co. (ANK) reported to the ministry plans to prevent a recurrence of an April 22 problem at Komatsu Airport in Ishikawa Prefecture.

In that incident, the pilot of an ANK flight started down a runway without permission from the tower.

It was also reported Wednesday that an emergency slide on a door suddenly inflated aboard a Bangkok-bound ANA flight from Narita on May 15, injuring a cabin attendant who was trying to close it.

PDN
JAN 17, 2006

# JAL ordered to submit new safety report

TOKYO (AP) — Japan's government has ordered Japan Airlines to submit a new report by the end of the month detailing measures it will take to halt a series of glitches that have raised safety concerns, an official said Monday.

The Transport Ministry issued its instruction following two recent incidents involving JAL, a ministry spokesman said on condition of anonymity citing ministry policy.

A JAL spokesman said the company is preparing its response to the ministry's instruction.

"We regret causing any public concern," said JAL spokesman Steve Pearlman. "We have been taking corrective measures to improve safety procedures."

An aircraft operated by a JAL-affiliate on a Tokyo-to-Taipei flight on Dec. 26 took off with a latch on the emergency exit incorrectly positioned during takeoff. A crew member noticed and corrected the error, said Pearlman.

In the second incident on Jan. 7, a JAL aircraft on a domestic flight was discovered to have flown with the reverse thruster on one engine locked into the maintenance position, Pearlman said. The aircraft landed safely.

The two recent incidents are the latest in a series of operational and maintenance gaffes on aircraft operated by JAL group-companies since early 2005.

The company submitted a plan last April for reducing such instances of human error. However, the latest incidents indicated further efforts were needed, the ministry's spokesman said.

pg.8 5/09/05

# JAL official set to resign after string of safety lapses

TOKYO (AP) — Japan Airlines said Monday its chairman was resigning, a day after a drop in cabin pressure forced a JAL flight from New York to Tokyo with 355 people aboard to make an emergency landing.

Also Sunday, another JAL flight carrying 85 passengers bound for Manila was rerouted when the plane's altimeter malfunctioned, officials said. There were no injuries in either incident.

Isao Kaneko, will resign at the end of the month to take responsibility for a string of safety lapses at Japan's largest carrier, company spokesman Teiji Murayama said.

Murayama said Kaneko's offer to resign on May 31 was accepted early Monday.

Japan's Transport Ministry issued a highly unusual public warning to the company earlier this year over a series of errors.

In January a JAL pilot in northern Japan attempted to take off without receiving approval from air traffic controllers.

The Japan Airlines jet headed to Tokyo from New York on Sunday landed in northern Japan about an hour after the sudden drop in air pressure inside the cabin, officials said.

The pilot guided the Boeing 747 from an altitude of 33,000 feet to 9,900 feet about 10 minutes after the loss of pressure triggered the release of oxygen masks.

The flight, the second leg of a journey that began in Brazil, landed at Shin Chitose Airport in Sapporo city on the northernmost main island of Hokkaido.

Separately, the JAL jet carrying 85 passengers bound for Manila was rerouted to an airport near the western city of Osaka when its altimeter malfunctioned shortly after takeoff from the central city of Nagoya, the officials said.

The altimeter was fixed two hours later, and the plane continued on to the Philippines.

On April 14, Japan Airlines announced a series of measures to improve safety monitoring and reporting within the organization, in response to administrative warnings made by the Japan Civil Aviation Bureau in March.

In a statement on the airline's Web site, JAL President Toshiyuki Shinmachi said: "JAL management and staff of the JAL Group have reflected deeply on the series of safety-related incidents."

"We have analyzed the causes of each and have formulated countermeasures to improve safety based on our findings," he added.

*Pacific Daily News staff contributed to this report.*

**ON THE NET**

▲ **Japan Airlines:** www.jal.co.jp/en/

# EXHIBIT

# 4

CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÅTÑA, GUAM 96932-5027
TELEPHONE 671.472.6813 FAX 671.477.4375
WWW.CARLSMITH.COM

DIRECT DIAL NO.
X302

DLEDGER@CARLSMITH.COM

OUR REFERENCE NO.:
051729-00007

January 23, 2006

**VIA CERTIFIED MAIL WITH**
**RETURN RECEIPT REQUESTED**

Mr. Pedro Agravante
Post Office Box 22281
Guam Main Facility
Barrigada, Guam 96921

Re: Pedro P. Agravante, et al. vs. Japan Airlines International Co., Ltd.
District Court of Guam Civil Case No. CIV04-00036

Dear Mr. Agravante:

This concerns your letter dated January 23, 2006. Once again it is apparent you are having difficulty understanding the rules governing practice in the United States District Court.

First, with regard to a Proposed Scheduling Order and Discovery Plan, only ***one*** such document, ***signed by both parties***, is to be filed with the court. In other words, in this instance I am not required to file my own Proposed Scheduling Order. Rather, as the Plaintiff in this action, it is your obligation to prepare the joint document and to obtain the Defendant's agreement and signature.

On January 17, 2006, I signed the "draft" Proposed Scheduling Order you dropped off at my office earlier that day. We whited out the word "Draft" and added the word "alleged" to your description of the case. (Adding the word "alleged" means nothing more than to say it remains your burden to actually prove you sustained a personal injury on Flight 941). My secretary then called Mrs. Agravante and asked her to inform you that your Proposed Scheduling Order, with my signature, was ready for you to pick up and file at court. You did not do so. Apparently, you instead filed another copy of your Proposed Scheduling Order not signed

by me. In this regard, please refer to Fed. R. Civ. P. 5, which requires the party filing documents (in this instance you) to serve all other parties who have appeared in the action.

A copy of the Proposed Scheduling Order I signed on January 17, 2006 is enclosed.

Best regards,

David Ledger

DPL/jmcb
4812-7218-9696.1.051729-00007