PEDRO P. AGRAVANTE, JR., Pro se
And CORITA B. AGRAVANTE, Pro se
P.O. Box 22281
GMF, Guam 96921
Telephone no. 671.646/8453, 4537
Cell. Phone 671.788/7291



FILED
DISTRICT COURT OF GUAM
NOV 2 7 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| PEDRO P. AGRAVANTE, JR.<br>CORITA B. AGRAVANTE<br><br>Plaintiffs<br><br>Vs.<br><br>JAPAN AIRLINES INTERNATIONAL<br>  CO., LTD,.<br><br>Defendant<br>_____/ | CIVIL CASE NO. CIV04-00036<br><br>PLAINTIFF RESPONSE TO<br>DEFENDANT'S SECOND MOTION:<br>DECLARATION OF SERVICE |

I.  Background.

On November 15, 2006, the Defendant JAL filed a Second Motion to extend Scheduling Order Deadlines (the"Motion"). The Expert Witness disclosure deadline is one of those deadlines the Defendant requests to extend because that deadline is presently set for November 30, 2006.

The Court is concerned that further extensions of Pretrial dates may affect the current trial date on March 20, 2007. The Court ordered the parties should come to the hearing prepared to address this issue.

During the hearing the Defendant explained that because of process of securing the data that is beyond JAL's control, the delay has necessitated the second request for

**ORIGINAL**

an extension. Good cause therefore exists and justifies time for JAL to meet its expert witness disclosure obligations and the Court specifically addressed Plaintiffs Agravante had indicated they had no objection to the requested extensions, the Court grants the Defendant's second motion for an extension. The following deadlines are amended as Follows:

- Expert Disclosures: December 29, 2006
- Rebuttal Expert Disclosures: January 12, 2007
- Discovery Cutoff January 29, 2007
- Discovery Motion Deadline: February 7. 2007
- Dispositive Motion Deadline: February 15, 2007

All other dates and deadlines previously set forth in the Scheduling Order (Docket no.36) and Discovery Plan (Docket no 37) shall remain in full force and effect.

The Defendant had further suggested, because of the movements of certain disclosures, Cutoff, and motion deadlines, the Court should also move the trial date in July of 2007. For this, the Court has also recommended the parties should meet first, determine the date of trial, agree and submit it in Court. And added, if possible, the parties should set the trial date in June 2007. The Court's schedules at that time has not much of a traffic. The Court left both parties to decide.

## II. THE DATA SOUGHT FOR BY THE DEFENDANT IS TO DISPUTE/REBUTT PLAINTIFFS REGARDING "STATIC TAKE OFF" AS HAVING LACK OF MERIT.

On July 17, 2006, as part of Expert Witness Disclosure, Plaintiff provided Defendant Capt. Antonio Tuano, Pilot with Philippine Airlines for 20 years, with Pilot License Number: CPL 2725272, Class of Aircraft Operating: B747-200, B747-400, Airbus A330-300.

In his testimony, JAL pilot made an Error of Judgment when he took-off the ground at Narita Airport, Japan on July 20, 2002 with Static Take-Off, knowing that the Aircraft is flying in full gross weight, which means; full passenger capacity, full cargo and full fuel and also knowing that Narita Airport in Japan has a longer runway with more than 8 thousand feet.

WHAT IS STATIC TAKE-OFF?

Captain Antonio Tuano define it as; it is the manner in which the pilot steps on the brake of the aircraft and at the same time giving fuel to the engine to reach 70% power before releasing, then applying full force and taking a sudden take-off to the air.

The Defendant define it as; the pilot set its brakes, spools the engine to a sufficient power level, release the brakes, and accelerates quickly to take off speed.

While a rolling take-off utilizes a more gradual acceleration to reach take-off speed.

Because many aviation accident are caused by improper operation, the starting point of any aviation case should be a simple consideration of whether the aircraft was properly operated.

Japan Airlines Pilot in this case did not properly operate the aircraft that cause the Plaintiff Pedro P. Agravante injuries, that was the manner the pilot operated the aircraft when taking-off the ground at Narita Airport, Japan on July 20, 2002.

The two crucial elements to establish in this case are: NEGLIGENCE AND CAUSATION.

NEGLIGENCE: it was obvious the Pilot when operating the aircraft did not take in consideration several factors; he is flying a commercial aircraft in full gross weight, which means, full passenger capacity, full cargo and full fuel. Also, Narita Airport, in Japan is an International Airport, with a longer runway than smaller airports, having more than 8 thousand feet. For a pilot to use "Static Take-off" or sudden take-off to the air without considerations of these dangerous elements that may impede his operations of the aircraft is totally irresponsible and intentional. Also, the Pilot of the aircraft has failed or neglected to recognize and to follow established in house rules and regulations to ensure the safety and well-being of the paying passengers on board JAL 0981 on July 20, 2002.

CAUSATION (The act or process of causing) The Pilot's error of Judgment or purposely flying the aircraft with "Static Take-off" injuring passengers is the ultimate reasons for the accident on board JAL 0981 July 20, 2002.

III. DEFENDANT JAL REASONS TO EXTEND THE SCHEDULING ORDER DEADLINES.

Because Defendant JAL has faced difficulty in obtaining data for a flight that occurred more than four years ago, in particular, flight data that is usually purged within Six (6) months after the flight, Defendant has decided to present an alternative data and information for its expert to evaluate for the purposes of preparing Expert Witness Disclosures.

1. According to Defendant JAL, after months of trying to determine the identity of the Captain and its leading flight attendant on flight JO981, on July 20, 2002, it did finally has able to determine the identity of these persons. JAL even pat its back because it is not a small task in that flight was four (4) years ago and it employs an enormous number of people.

Plaintiffs response to these reasons is that, this is unbelievable. The truth is, JAL has known the identities of these individuals since then because;

On July 28, 2005, with Plaintiffs previous counsel, Gavras, the Defendant JAL Initial Disclosures mentioned 2 cabin attendants with discoverable information; Reiko Asatani and Rumi Fujihara.

On May 4, 2006, this time with Plaintiffs Agravante, as Pro se, Defendant JAL has also mentioned in its Initial Disclosures the same cabin attendants with discoverable information; Reiko Asatani and Rumi Fujihara.

Through the help of these 2 cabin attendants, Defendant JAL could easily

determine the name of the Captain and the flight leading attendant because they were working as a team on that flight JO981, on July 20, 2002. To supplement their reasoning of having difficulty of determining these responsible people is not seemingly worth of belief or not plausible.

2. According to Defendant JAL, this Captain they just found, was able to provide the necessary flight data and related information he had surprisingly entered in his personal diary. What is more, the Captain interpreted the data which otherwise would have been meaningless to lay person not well-versed in aviation and aeronautics.

Once more, Plaintiffs believe Defendant JAL reason is unbelievable. The computer data and information that was purged out or erased was purposely done because it was part of JAL Standard Operating Procedure (SOP). Should this data and information was important for JAL because of an incident that happened on Board JAL flight no. JO981 on July 20, 2002, this data should had been transcribed then by following also established Standard Operating Procedure, before it was purged out or erased and in stored for future use.

For someone (the Captain) who just came out from the blue declaring he has surprisingly entered the telemetry information and data in his personal diary of the flight that happened 4 years ago is questionable.

Furthermore, manually logging of data and information is no longer in practice because this function had been taken over by computerization years ago. More so, the practice of paralleling of manually produced data and information to computer's data

is no longer practical because the aircraft's computer data and information are facts investigators of airline accidents always looked for and relied on to base their investigations.

Therefore, this leaves the data and information written by a Captain in his personal diary having no integrity to rely on.

3. According to Defendant JAL, the data and information that will be produced from the Captain's personal diary will be available to an expert, Dr. Laura Liptai to evaluate and to form her opinion to prepare Expert Witness Disclosures and provide copy to Plaintiffs.

Dr. Laura Liptai is a new name added to the list of Defendant JAL expert witness but was not disclosed on July 13, 2006 together with Dr. Richard Gill, Expert in Human Factors from Applied Cognitive Science of Spokane, Washington U.S.A., and Dr.Peter E. Diamond, M.D., from Honolulu Sports Medical Clinic, Honolulu, Hawaii. Her name was disclosed by Defendant JAL even before the approval of their Second Motion to Extend Scheduling Order Deadlines filed on November 15, 2006. The Order of the Court came out on November 20, 2006 after the hearing approved by the parties allowing the extensions.

Plaintiffs believe Defendant JAL is purposely violating the mandatory disclosure as set forth pursuant to Federal Rules of Civil Procedure 26(a)(1) to further pursue information and data to abate and undermine Plaintiffs efforts in this action in in Court.

To supplement their action based on this Captain's data in his personal Diary, JAL has even gone to Boeing, the manufacture of the aircraft (Airbus), to allow to conduct test based on the said information and data. Because the request "involve confidential trade information", Boeing took a few weeks to examine the request, then provided JAL approval to test the diary data and information based on simulations of the flight that occurred 4 years ago by use of a flight simulator.

Plaintiffs believe the first request of JAL was not granted because, the one asked first by JAL involve confidential trade information. Boeing will not allow this procedure to be a part of public document for all to see. Instead, allow JAL to use its flight simulator, a lower category procedure that does not involve confidential trade information, to mimic the condition of flight JAL JO981 at the time it took-off the ground at Narita Airport, Japan at about 10:30 p.m. on July 20, 2002.

But, the nature of this data produced by JAL having acquired from a certain Captain surprisingly had entered the data in his personal diary during that flight is absolutely unbelievable. It could be assumed it may have been manufactured to meet certain requirements to have the test results believable to justify Dr. Laura Liptai Expert witness Disclosures.

Plaintiffs believe the data and information that will be produced by this flight simulator will have no merit, for the following reasons;

1. The data and information came from questionable Captains diary.

2. Whatever questionable data and information feed to the simulator will come out questionable by its nature.

3. This simulator, although also being used by the Navy, Air Force and other Members of the Arm Forces for different purposes and programming, it is also available in different versions in malls across the country for children and other interested people to indulge with for pass time entertainment.

Therefore, the data and information are fallible.

IV. CONCLUSION.

Plaintiffs believe the Defendant JAL continuous request for the Court to grant Extensions will not end even with the new extensions approved by parties and granted by the Court. This action should not be expected to come from the Defendant and its counsel because of their respective status. This difficulty they are mentioning and going through should have been expected coming from the Plaintiffs representing themselves Pro se. The difficulty is more so to the Plaintiff because of pain and suffering, mental anguish and losing hope. This is an injustice.

The Court should intently analyze the situation as presented by Defendant JAL Second Motion on November 15, 2006, as follows:

1. The data and information the Defendant sought for has already been purged out or erased from the aircraft computer file permanently. There is absolutely no substitute for this missing data to present in Court.

    2. The current option produced by Defendant JAL to substitute the computer Data to a certain Captain data written in his personal diary could be construed as manufactured because the data was obtained without following any standard operating procedure. With this modern technology around to help industries to streamline detailed functions of people and machinery is highly unlikely or unbelievable to have this Captain to logged this data in his diary.

    3. The action of Defendant JAL asking the court to Extend Scheduling Order Deadlines to pursue a Captain's diary written data through a Boeing simulator to produce data for its expert to analyze and form her opinion is a diversionary tactics that will increase the cost of litigation.

    4. Defendant will not stop violating Ethical Rules and Misconduct and even to the extent of resorting to committing fraudulent acts. (Manufacturing of data and information) to undermine Plaintiffs efforts to pursue this case in Court.

    Because of so many changes occurring in the Original Scheduling and Discovery Plan, Plaintiffs believe the plan pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 16.2, has already lost its integrity, should be declared by the Court null and void and the Court should order Defendant JAL for causing it technically in default.

DATED: Hagatna, Guam, November 27, 2006

PRO SE

_____
PEDRO P. AGRAVANTE, JR.

PRO SE

_____
CORITA B. AGRAVANTE

DECLARATION OF SERVICE

I, Pedro P. Agravante, Jr., hereby declare under penalty of perjury of the laws of The United States, that on November 27, 2006, I have served via Hand Deliver, a true and correct copy of the PLAINTIFFS RESPONSE TO DEFENDANT SECOND MOTION; DECLARATION OF SERVICE upon Defendant counsel at the following Address:

> JAPAN AIRLINES INTERNATIONAL CO. LTD
> C/O CARLSMITH BALL LLP
> Mr. David Ledger
> Ms. Elyze J. Mcdonald
> Suite 401, Bank of Hawaii Building
> 134 West Soledad Street
> Hagatna, Guam 96910
> Telephone no. 672. 472/6813

Executed this 27, of November 2006, Hagatna, Guam.

_____
PEDRO P. AGRAVANTE, JR.
Plaintiff