CARLSMITH BALL LLP

DAVID P. LEDGER
ELYZE J. MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendants
Japan Airlines International Co., Ltd.

**FILED**
DISTRICT COURT OF GUAM.
FEB 16 2007
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| PEDRO P. AGRAVANTE, JR. and CORITA B. AGRAVANTE<br><br>Plaintiffs,<br><br>vs.<br><br>JAPAN AIRLINES INTERNATIONAL CO., LTD.,<br><br>Defendant. | CIVIL CASE NO. CIV04-00036<br><br>**TRIAL BRIEF OF DEFENDANT JAPAN AIRLINES INTERNATIONAL CO., LTD.** |

## I. FACTUAL CONTENTIONS

On July 20, 2002 Mr. Agravante was a passenger on JAL flight no. 981 from Narita, Japan to Guam. Mr. Agravante was sitting in seat 2G in the first class cabin. This is an aisle seat in the center section of the cabin. His companion Robert Del Rosario was seated in 1H, an aisle seat on the right side of the aircraft. Mr. Agravante and Mr. Del Rosario had been in Japan on a business trip.

On take off food carts became dislodged from the galley storage cabinet, one of which struck Mr. Del Rosario on his left knee and ankle and stopped there (the cart did not enter the aisle). A second cart hit the armrest of seat 1G directly across from Mr. Del Rosario and likewise

stopped there, and the third run-away cart ran into the other two and stopped there. No food cart went any further than the leading edge of seats 1H and 1G. No food cart came anywhere near Mr. Agravante. Shortly after takeoff when the aircraft leveled off cabin flight attendants moved the food carts back where they belonged and attended to Mr. Del Rosario.

Subsequently, Mr. Del Rosario made a personal injury claim against the airline, sued the airline, and ultimately settled the lawsuit for $175,000.[1] Mr. Agravante supported Mr. Del Rosario's claim and lawsuit by way of preparing a written statement describing the events. That statement is obviously a key item of evidence in this action, being one of several items of evidence proving Mr. Agravante sustained no injury on the flight.

Nevertheless, Mr. Agravante filed this suit against the airline. Being unable to claim any manifest physical injury similar to Mr. Del Rosario, he claims instead that the acceleration of the aircraft on take off pushed him back in his first class seat with sufficient force to cause some sort of "soft tissue" injury, which so far has been undetectable by the only medical doctor who has reviewed the case. Indeed, Mr. Agravante did not see any care provider for his so-called injury until two years after the flight.[2] The airline readily admits some of its flights departing Narita routinely accelerate more quickly than a rolling takeoff if the flight happens to be departing on the shorter of Narita's two main runways. In the aviation industry this is known as a "static take off" which involves setting the aircraft's brakes, running up the engines to a pre-determined power setting, and then releasing the brakes. In large part, the mechanics of accomplishing this is controlled by aircraft computer systems, as opposed to manually by the cockpit crew.

---

[1] Mr. Del Rosario then disavowed the settlement and demanded something on the order of $1,000,000 for his relatively minor injuries - from which he had recovered well enough to make multiple trips to the Philippines and otherwise resume normal activities. On motion by the airline this Court enforced the settlement. Mr. Del Rosario has appealed the Court's ruling to the Ninth Circuit.

[2] Not so coincidentally, this "health care visit" coincided with his decision to retain a lawyer and file this lawsuit.

Mr. Agravante claims that the static takeoff caused a multitude of injuries. However, he saw no health care provider until September 2004, more than two years after his flight. Expert medical opinion reveals no evidence of any injury. He claims to have experienced pain in his arms, neck, and joints in September 2004. If he did, it had nothing to do with the flight in July 2002.

JAL will present evidence through the JAL cabin attendants on duty for the flight that no food cart came near seat 2G. They will testify that Mr. Agravante never filled out an incident report nor otherwise reported any injury or pain to the flight crew or any other JAL representatives. He said nothing about the takeoff. He did, however, have his wits about him sufficiently to request the cabin attendants to "fill out an injury report for the injury to Mr. Del Rosario." The incident report Agravante filled out pertained only Mr. Del Rosario. Not one out of 133 passengers said anything to the cabin crew about the takeoff.

JAL will present evidence through its expert, Dr. Laura Liptai, and through the airplane's captain, that the airplane's static take-off did not generate acceleration forces greater than that normally experienced on large commercial jetliners and, what's more, less than or about the same as one would experience driving a car. JAL's medical expert, Dr. Peter Diamond, will testify by video deposition that Mr. Agravante's complaints are unrelated to any identifiable incident or trauma, instead relating solely to degenerative conditions.

Corita Agravante has also filed a claim for loss of consortium. There is a complete lack of evidence supporting this claim. In fact, Ms. Agravante refused to appear for deposition, as did Mr. Agravante.[3]

---

[3] This situation is before the Court on the airline's motion to compel and in conjunction with the motion to continue the trial to June 2007 to allow sufficient time for the airline to take these depositions and conduct the anticipated further discovery flowing from the depositions.

## II. LEGAL BRIEF

Airlines are liable for an injury to a passenger if the injury is caused by an "event external to the passenger." Warsaw Convention, Art. 17. Examples of such an "event" would be an overhead bin collapsing, run-away food carts, failure to render first aid, a slip-and-fall on a spilled beverage, a hot beverage spilled by a cabin attendant, or any number of like instances where there is some unusual or unexpected event which occurs through no fault of the passenger and causes harm. A classic example would be what happened on this flight when the food carts came out of the storage cabinet. But no food cart hit Mr. Agravante nor did one even get close to him. A routine takeoff from Narita Airport is not an "unexpected or unusual event" within the meaning of the applicable law. Indeed, the takeoff is programmed into and controlled by aircraft computers and as such is the same every time the aircraft takes off. The captain will testify that there was nothing unusual or unexpected with this takeoff, that is, that there was no "event." Furthermore, Mr. Agravante did not suffer any injury on the flight. If Mr. Agravante suffers from neck, back, or leg pain, it is due to some other reason.

## III. ATTORNEYS FEES

JAL is unaware of any authority that would award attorneys fees for either party.

## IV. EVIDENTIARY ISSUES

Plaintiffs are proceeding pro se, but must be held to the same standards as lawyers practicing in this Court. Jacobsen v. Filler, 790 F.2d 1362, 1364-65 (9th Cir. 1985).

Furthermore, Plaintiffs refused to submit to their depositions. As noted in its pending motion to compel, JAL seeks the Court's assistance in requiring the Agravantes to submit to their depositions.

## V. ABANDONMENT OF ISSUES

JAL is not aware of the abandonment of any issues.

DATED: Hagåtña, Guam, February 16, 2007.

_____
DAVID P. LEDGER
ELYZE J. MCDONALD
Attorneys for Defendants
Japan Airlines Co., Ltd.